# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| GEORGE WEBB SWEIGERT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-2223 (RC) |
| | : | | |
| v. | : | Re Document No.: | 17, 19, 20, 22, 26 |
| | : | | |
| THOMAS PEREZ, *et al.* | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTIONS TO DISMISS

## I. INTRODUCTION

*Pro se* plaintiff George Webb Sweigert brings this putative class action against a host of individuals and entities purportedly associated with the Democratic National Party—including Haseeb Rana, Theresa Grafenstine, the Democratic National Committee ("the DNC"),[1] Deborah Wasserman Schultz, and Huma Abedin—in connection with alleged actions taken by Defendants during the Democratic primaries to the 2016 U.S. Presidential election. *See generally* Compl., ECF No. 1; *see id.* ¶¶ 4–13. In particular, Mr. Sweigert, an alleged supporter of Bernie Sanders, claims that Defendants committed fraud and breach of fiduciary duty by, among other things, conducting a website-hacking conspiracy to promote Hillary Clinton's candidacy and to diminish the candidacy of Bernie Sanders. *Id.* ¶ 31. Defendants Haseeb Rana, the DNC, Deborah

---

[1] The complaint also names Thomas Perez and DNC Services Corp., doing business as the Democratic National Committee, as Defendants. The Complaint names Mr. Perez in his official capacity as Chairman of the Democratic National Committee. This memorandum opinion refers to Mr. Perez and the Democratic National Committee collectively as "the DNC" or "DNC."

Wasserman Schultz, Theresa Grafenstine, and Huma Abedin each move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court grants Defendants' motions to dismiss for lack of subject matter jurisdiction. Pursuant to Rule 12(h)(3), this order applies to all Defendants, not just those who have responded, because no named Defendant bears a causal relation to Mr. Sweigert's alleged injury in fact.

## II. FACTUAL BACKGROUND

In the 2016 Presidential election's Democratic primaries, Hillary Clinton won the party's nomination over Bernie Sanders and other candidates. Mr. Sweigert, an alleged supporter of Bernie Sanders, claims that he contributed $30 to Bernie Sanders's Presidential campaign, donating through ActBlue, a fundraising non-profit.[2] Compl. ¶ 2. Mr. Sweigert alleges that Defendants, all but Theresa Grafenstine ("Ms. Grafenstine"), orchestrated a hacking conspiracy designed to tip the Democratic primaries in favor of Hillary Clinton. *Id.* ¶¶ 32–36.

First, Mr. Sweigert alleges that Defendants, other than Ms. Grafenstine, defrauded donors to the DNC and to Bernie Sanders by "engineer[ing] a sophisticated email phishing attack" against Bernie Sanders supporters and "concoct[ing] a false narrative that the Russian government had been responsible" for the attack. *See id.* ¶¶ 33, 35. In particular, Plaintiff claims that Defendants undertook this attack by creating a URL similar to that of ActBlue, a fundraising non-profit, and designed to route funds intended for Bernie Sanders to bank accounts

---

[2] Mr. Sweigert alleges further that ActBlue charges a 3.95% processing fee for each contribution. Compl. ¶ 14 (internal quotation marks omitted). However, it is not entirely clear whether this processing fee was charged in addition to the alleged $30 contribution or taken from the alleged $30 contribution. For the purposes of this analysis, this Court refers to Mr. Sweigert's alleged injury as "the $30" contribution.

2

operated by Deborah Wasserman Schultz and/or Imran Awan. *Id.* ¶ 33. Mr. Sweigert theorizes that the DNC, in allegedly propagating a false narrative about the supposed hacking, intended that the statements would induce the DNC donor class to provide contributions, statements upon which DNC donors actually relied, alleges Mr. Sweigert, thus amounting to fraud. *See id.* ¶¶ 34–37.

Second, Mr. Sweigert claims that Defendants breached their alleged fiduciary duty to Mr. Sweigert and to all Democratic donors when certain Defendants:

(a) "[h]acked key Congressional communications systems such as iConstituent and InterAmerica," thus creating a spy ring out of the U.S. House of representatives. *Id.* ¶ 42.

(b) "[u]sed an illegal email/dropbox combination in the [U.S.] House of Representatives . . . to share information with representative[s] of foreign governments including Pakistan and the UAE for the purpose of economic espionage . . . ." *Id.* ¶ 45

(c) "[e]ngag[ed] in a pay to play scheme, moving privileged, private communication[s] from iConstituent Congressional servers located in the U.S. House of Representatives and DNC servers . . . to Anthony Weiner's laptop . . . ." *Id.* ¶ 46.

(d) Handled iPhones and iPads intended only for Congressional use. *Id.* ¶ 47.

(e) Conspired to create fake employees under the name "PeopleSoft" in the House of Representatives Human Resources system and sent payments from fake employee accounts and from the U.S. Congressional Federal Credit Union. *Id.* ¶¶ 48–49.

(f) Took electronic devices such as thumb drives, hard drives, and laptops containing trade secrets and traded these devices to "business entities" in Pakistan. *Id.* ¶ 50.

Based on these allegations, Mr. Sweigert filed suit in this Court claiming that Defendants committed fraud and breached fiduciary duties owed to Plaintiff and to members of the putative

3

classes.[3]  Defendants Haseeb Rana, the DNC, Deborah Wasserman Schultz, Theresa Grafenstine, and Huma Abedin move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants' motions are now ripe for decision.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction. . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  In view of this presumption, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  No action on behalf of either party can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement.  *See Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Zaidan v. Trump*, 317 F. Supp. 3d 8, 16 (D.D.C. 2018) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)).  However, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the

---

[3]  Mr. Sweigert proposes four classes: (1) all donors to the Democratic National Committee from January 1, 2015 to November 6, 2017; (2) all donors to Bernie Sanders's 2016 presidential campaign from January 1, 2015 to November 6, 2017; (3) all registered members of the Democratic Party; and (4) all citizens of the United States.  Compl. ¶ 20.

4

complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion. *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, Fed. Prac. & Pro., Civil § 1350 (3d Ed. 2004)); *see also Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003) (explaining that consideration of documents outside of pleadings does not convert a motion to dismiss under Rule 12(b)(1) into a motion for summary judgment).

The D.C. Circuit has instructed that a motion to dismiss for lack of standing constitutes a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure because "the defect of standing is a defect in subject matter jurisdiction." *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915–16 (D.C. Cir. 2003); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see generally Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475–76 (1982). Accordingly, a lack of standing denotes a lack of subject matter jurisdiction, which would support dismissal pursuant to Rule 12(b)(1).

### IV. ANALYSIS

Mr. Sweigert brings two claims against Defendants: one for fraud and the other for breach of fiduciary duty. Compl. ¶¶ 31–51. Defendants Haseeb Rana, the DNC, Deborah Wasserman Schultz, Theresa Grafenstine, and Huma Abedin argue, among other things, that this Court lacks subject matter jurisdiction because Mr. Sweigert lacks standing to pursue his claims. *See* Def. Rana's Mem. P. & A. Supp. Mot. Dismiss Pl.'s Compl. ("Def. Rana's Mem.") at 3–6, ECF No. 17; Def. DNC's Mem. P. & A. Supp. Mot. Dismiss Pl.'s Compl. ("Def. DNC's Mem.") at 6–19, ECF No. 19; Def. Wasserman Schultz's Mot. Dismiss at 1–2, ECF No. 20; Def.

5

Grafenstine's Mem. P. & A. Supp. Mot. Dismiss Pl.'s Compl. ("Def. Grafenstine's Mem.") at 6–10, ECF No. 22; Def. Abedin's Mem. P. & A. Supp. Mot. Dismiss Pl.'s Compl. ("Def. Abedin's Mem.") at 7, ECF No. 26.

To establish subject matter jurisdiction, a plaintiff must have standing, as governed by Article III of the Constitution. *See* U.S. Const. art. III, § 2. Plaintiffs bear the burden of establishing subject matter jurisdiction. *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 75 (D.D.C. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A party has standing to bring suit under Article III of the Constitution only when she has suffered an injury in fact—that is, an injury which is concrete, particularized, and actual or imminent—which is traceable to defendant's actions and redressable by the relief sought. U.S. Const. art. III § 2, cl. 1; *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013); *Lujan*, 504 U.S. at 560–61; *see also United States v. Richardson*, 418 U.S. 166, 176–177 (1974). Allegations of a speculative or possible future injury do not satisfy the requirements of Article III. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Moreover, "[P]laintiffs bear the burden of pleading . . . concrete facts showing that the defendant's actual action has caused the substantial risk of harm." *Clapper*, 568 U.S. at 414 n.5.

Defendants contend that Plaintiff lacks Article III standing to bring his claims.[4] Def. Rana's Mem. at 3–6; Def. DNC's Mem. at 6–19; Def. Abedin's Mem. at 7; Def. Grafenstine's

---

[4] Even though Mr. Sweigert brings a putative class action, he must nevertheless demonstrate that he individually has standing to litigate this case. *O'Shea v. Littleton*, 414 U.S. 488, 488 (1974) ("If none of the named plaintiffs purporting to represent a class meets the case-or-controversy requirement, none may seek relief on behalf of himself or any other member of the class."); *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) ("Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims."). It bears mentioning, too, that, as a *pro se* litigant who apparently lacks training as a lawyer, Mr. Sweigert is not likely equipped to represent a class.

Mem. at 6–10; Def. Wasserman Schultz's Mot. Dismiss at 1–2. As explained below, this Court concludes that Plaintiff has failed to establish subject matter jurisdiction over this case. Mr. Sweigert suffered, at most, one legally cognizable injury in fact—the $30 that he allegedly donated to Bernie Sanders's 2016 Presidential campaign—but this injury is not traceable to any of Defendants' actions, and is therefore not redressable by this Court. Thus, this Court grants Defendants' motions to dismiss.[5] In addition, pursuant to Federal Rule of Civil Procedure 12(h)(3), this Court dismisses this action against all Defendants, not just those who have responded, because no named Defendant bears a causal relation to Mr. Sweigert's alleged injury in fact.

### A. Injury in Fact

Defendants argue that Plaintiff has not suffered a legally cognizable injury in fact that would support a finding of standing. *See* Def. Rana's Mem. at 5; Def. DNC's Mem. at 10–14; Def. Abedin's Mem. at 7. Plaintiff enumerates, both in his Complaint and in his responses to Defendants' motions to dismiss, a host of alleged injuries. *See infra* pp. 8–10; *see, e.g.*, Resp. Opp. Def. Theresa Grafenstine's Mot. Dismiss ¶ 3, ECF No. 24. This Court concludes that Plaintiff has alleged but one legally cognizable injury in fact: the $30 that he alleges that he donated to Bernie Sanders's Presidential campaign.

Courts have interpreted "injury in fact" to mean an "invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or

---

*See, e.g.*, *DeBrew v. Atwood*, 792 F.3d 118, 131–32 (D.C. Cir. 2015) (holding that a trial court did not abuse its discretion in denying a *pro se* plaintiff's motion for class certification on the basis that the plaintiff could not demonstrate that he would fairly and adequately protect the interests of the class because he lacked training as a lawyer).

[5] Because the Court concludes that Mr. Sweigert lacks standing to bring this action, it need not address Defendants' other arguments for dismissal.

7

hypothetical." *Lujan*, 504 U.S. at 560–61 *(*internal citations and quotation marks omitted) (finding alleged harm to conservationist organization associated with danger to wildlife abroad insufficiently concrete to amount to a legally cognizable injury in fact). Courts have similarly rejected so-called "taxpayer standing," labeling grievances about actions that affect all citizens equally as "generalized grievances," which are insufficiently particularized to support standing. *See, e.g.*, *Becker v. FEC*, 230 F.3d 381, 389 (1st Cir. 2000) (holding that "harm done to the general public by corruption of the political process is not a sufficiently concrete, personalized injury to establish standing" for supporters of a political candidate); *Gottlieb v. FEC*, 143 F.3d 618 (D.C. Cir. 1998) (individual voters lacked standing based on alleged injury to ability to influence political process). In *Clapper v. Amnesty International*, the Supreme Court held that an "objectively reasonable likelihood" that a defendant will incur a future injury—in that case, that the government would conduct warrantless phone-taps of American citizens—did not render an alleged injury sufficiently imminent to support standing. *Clapper v. Amnesty International, USA*, 568 U.S. 398, 401 (2013).

Plaintiff has advanced in his complaint and in all other documents before the Court only one legally cognizable injury in fact: the $30 that he purportedly donated to Bernie Sanders's 2016 Presidential Campaign. *See* Compl. ¶ 2. Plaintiff's alleged loss of $30 is indeed sufficiently concrete, particularized, and actual to satisfy the injury-in-fact requirement of standing. *See* U.S. Const. art. III § 2, cl. 1; U.S.C.A. § 3730(b)(5)(c). Unlike in *Lujan* and *Clapper*, where the potential harm associated with danger to species abroad and with phone-tapping American citizens, respectively, was either prospective, conjectural, or generalized, the alleged $30 injury incurred to Mr. Sweigert occurred in the past and, upon the presentation of evidence, is potentially demonstrable. *Clapper*, 568 U.S. at 420; *Lujan*, 504 U.S. at 555; *see also*

*In re U.S. Office Personnel Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 18–19 (D.D.C. 2017). Accordingly, the alleged $30 injury purportedly incurred to Mr. Sweigert is concrete, particularized, and actual, and therefore qualifies as a legally cognizable injury in fact.

However, all other harms that Plaintiff alleges—including grievances with the political process or with the internal workings of the DNC or with failures to investigate alleged crimes within the House of Representatives—fail to amount to legally cognizable injuries in fact because Mr. Sweigert has failed to articulate how any of those allegedly wrongful acts harmed him. Compl. ¶ 53; *see Ndaba v. Obama*, 697 F. Supp. 2d 75, 75 (D.D.C. 2010) ("[P]laintiffs seeking to bring class action lawsuits 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see generally* Compl. ¶¶ 15–20. Mr. Sweigert's claim regarding the DNC's hacking also fails to reflect injury in fact, since Mr. Sweigert alleges no concrete, particularized harms associated with any purported hacking or other actions. For example, Mr. Sweigert does not explain why the purportedly illegal taking of this information might have injured *him*. Likewise, Mr. Sweigert claims that Defendants "concocted a false narrative" regarding Russia's responsibility for the hacking and phishing attacks, but he offers no indication of what particularized, concrete harm he suffered due to these actions. *See* Compl. ¶ 35. Indeed, Mr. Sweigert makes no allegation that information concerning him was taken. Moreover, Mr. Sweigert cites broadly the "subver[sion]" of "free speech and debate," the undermining of "free and fair elections," and "irreparable harm to the legislative processes," *see* Compl. ¶¶ 42–43, 46, but these purported injuries are textbook generalized grievances that are not actionable. Similarly, Defendants' alleged "[m]ishandling [of] phones and laptops intended for

Congressional Members" has no apparent connection to Mr. Sweigert, and certainly does not suffice to show that Mr. Sweigert may have been injured by Defendants' conduct. *Id.* ¶ 47.

Moreover, Plaintiff does not allege any future, imminent injury in fact which would sustain a claim for damages, *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d at 18–19, or injunctive relief. *See City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983) (explaining that each individual claim must be redressable by the relief sought); Compl. ¶¶ 15–20, 31–36. Finally, donating to an organization does not confer to a donee the right to litigate on behalf of an organization, *Orient v. Linus Pauling Instit. of Sci. & Med.*, 936 F. Supp. 704 (D. Ariz. 1996), nor does it create a legally enforceable contract. *Berg v. Obama*, 574 F. Supp. 2d 509, 529 (E.D. Pa. 2008) (holding that "statements of principle and intent" in political platform are "not [legally] enforceable promises under contract law"). And when Plaintiff alleges harm done to "all citizens of the United States," this constitutes by definition a generalized grievance, which cannot support standing. *See United States v. Richardson*, 418 U.S. 166, 166–73 (1974); *Becker v. FEC*, 230 F.3d 381, 389 (1st Cir. 2000); *Gottlieb v. FEC*, 143 F.3d 618, 618 (D.C. Cir. 1998). In sum, Plaintiff has suffered only one legally cognizable injury in fact: the $30 that he allegedly donated to Bernie Sanders's 2016 Presidential campaign. Therefore, this Court will consider causation of and redressability for only this one alleged injury.

### B. Causation

Plaintiff claims that Defendants caused his injury in fact—that is, his purported loss of $30 in the form of an alleged donation to the Bernie Sanders campaign. *See, e.g.*, Compl. ¶ 2, 55; Resp. Opp. Def. Grafenstine's Mot. Dismiss ¶ 4. However, this Court concurs with Defendants' contentions that Plaintiff has failed to draw a plausible causal link between Defendants' actions and Plaintiff's only legally cognizable injury in fact. *See* Def. Rana's Mem.

at 5; Def. DNC's Mem. at 10–14; Def. Abedin's Mem. at 7. As some of the Defendants argue, Mr. Sweigert's "Complaint is devoid of allegations that Plaintiff donated—or took any other actions—*in reliance on* anything that Defendants said or did," and it fails to "isolate a single, identifiable act by any Defendant that breached the asserted duty owed to him or the asserted class members," even assuming there exists a fiduciary relationship. Def. DNC's Mem. 14–15. Accordingly, Plaintiff has failed to demonstrate causation required to support standing.

To establish causation, a plaintiff must show that it is plausible that defendants proximately caused plaintiff's injury in fact. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545–46 (the Court's "[a]sking for plausible grounds . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan*, 504 U.S. at 560–61). That is, there must be "a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

According to Plaintiff's complaint, he donated $30 to Bernie Sanders's individual presidential campaign—not to the DNC or to any other Defendant in this matter—through ActBlue, a fundraising non-profit. *See* Compl. ¶ 2. ActBlue appears to operate independently of the DNC. *See* Compl. ¶¶ 2, 14.[6] And Plaintiff's complaint does not explain the exact relationship between the Bernie Sanders campaign and the DNC or any other Defendants in this action. *See generally* Compl. Plaintiff contends that "$228,000,000 was given by Bernie Sanders donors indirectly or directly to the DNC" from October 2015 to June 2016. Resp. Opp.

---

[6] Plaintiff does not contend that any of the Defendants appropriated his $30 contribution. Rather, he notes only that he donated to Bernie Sanders's presidential campaign through ActBlue. *See* Compl. ¶¶ 2, 34.

11

Def. Grafenstine's Mot. Dismiss ¶ 3. He appears to theorize that the DNC's alleged funneling of donations in such a way as to privilege Hillary Clinton's candidacy amounts to fraud because donors would not have contributed to Sanders had they known about the purported hacking conspiracy, and the related narrative alleged to have covered up the hacking, and other purported wrongful actions by Defendants. *See id.* ¶ 5.

However, because Mr. Sweigert made his alleged donation through ActBlue to the Bernie Sanders campaign, any loss that he purportedly suffered is not traceable to any Defendants. *See Abulhawa v. U.S. Dep't of Treas.*, 239 F. Supp. 3d 24, 33–35 (D.D.C. 2017). Even taking as true the claim that the DNC diverted donations intended for the Sanders campaign to the Clinton campaign, Plaintiff has not alleged that *his* donation went to the DNC and was diverted. To establish causation, the "connection between the injury and the conduct complained of must be attributable to the defendant and not the result of the independent action of some third party not before the court." *Id.* at 32 (internal quotation marks and citation omitted). Accordingly, the Court finds that Mr. Sweigert has failed to establish a causal link between his alleged injury and Defendants' conduct, and, thus, he lacks standing to bring this suit.

### C. Redressability

Finally, Plaintiff enumerates a number of forms of relief that he claims would address his purported injuries in fact. *See* Compl. ¶¶ 52–58. First, Mr. Sweigert seeks a judicially-mandated enjoinment of the aforementioned "spy ring" activity in the U.S. House of Representatives. *Id.* ¶ 52. Second, Mr. Sweigert seeks declaratory and injunctive relief with regard to Defendant DNC's alleged violation of its own Charter and/or Bylaws. *Id.* ¶ 53. Third, Plaintiff requests that the Court, by jury demand, order compensatory and punitive damages "in an amount sufficient to deter and to make an example of Defendants." *Id.* ¶¶ 55–57. This Court concludes

12

that Plaintiff's one legally cognizable injury in fact—his alleged loss of a $30 donation to the Bernie Sanders campaign—is not redressable by the relief sought.

The third requirement for a plaintiff to demonstrate standing is redressability: a plaintiff's relief sought must actually remedy the plaintiff's injury. *See, e.g.*, *Clapper*, 568 U.S. at 414 (holding that it must be likely, not merely speculative, that injury will be redressed by a favorable decision); *see also Lyons*, 461 U.S. at 105 (each individual claim must be redressable by the relief sought). Whereas causation focuses "on whether a particular *party* is appropriate," redressability centers on whether the proposed *forum* is appropriate. *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (emphasis added).

Mr. Sweigert first requests injunctions related to all activity involved in the alleged conspiracy; this remedy, however, does not redress the $30 that Plaintiff allegedly expended when donating to Bernie Sanders's campaign. *Lyons*, 461 U.S. at 105; *see also Doe v. Rumsfeld*, 683 F.3d 390 (D.C. Cir. 2012). Plaintiff further seeks an order enjoining the alleged "spy ring" activity;[7] however, since Mr. Sweigert has not alleged any cognizable injury resulting from such activity, this injunction would also not address Plaintiff's alleged injury. *See* Compl. ¶ 52. Next, Plaintiff seeks declaratory relief that the DNC violated its own charter and/or bylaws. *See id.* ¶

---

[7] Mr. Sweigert argues that plaintiffs may seek civil remedies for criminal conspiracies under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. 18 U.S.C. §§ 1961–68; *see* Compl. ¶ 44. But Mr. Sweigert's complaint does not bring any civil RICO claim. *See* Compl. ¶ 44 ("request[ing] for RICO [certain] referral letter or investigative documents"). Moreover, even if Mr. Sweigert's complaint had included such a claim, his allegations fall well short of stating a plausible civil RICO claim. "To do so, a plaintiff must show that a RICO predicate offense was the proximate cause of injury to his or her business or property." *Cheeks v. Fort Myer Constr. Corp.*, 728 F. App'x 12, 13 (D.C. Cir. 2018). Here, Mr. Sweigert asserts no predicate act of fraud directed toward him. *See id.* (noting that plaintiff's allegations constituted mere "generalized allegations of violent criminal acts" insufficient to plausibly allege a predicate violation of RICO). Furthermore, Mr. Sweigert fails to make any argument regarding how Defendants might have proximately caused his purported injury.

53. That form of relief is not available —a proposition for which there is much precedent— because, as explained above, Mr. Sweigert's one legally cognizable injury-in-fact bares no connection to the DNC. Plaintiff's request for damages cannot redress his alleged loss because, as explained above, it is not alleged that Defendants caused this loss. Because Plaintiff has advanced only one legally cognizable injury in fact, and that purported injury cannot be plausibly traced to any of Defendants' actions and is therefore not redressable, Plaintiff lacks Article III standing to bring this action.[8]

Finally, pursuant to Rule 12(h)(3), which provides that "if the court determines at any time that it lacks subject matter jurisdiction, [it] must dismiss the action," this order disposes of Plaintiff's Complaint against all Defendants, not merely those that have responded to the Complaint. Fed. R. Civ. P. 12(h)(3). As explained in this section above, none of the Defendants that Plaintiff has named, including those served and those yet to be served, bear any causal

---

[8] Even if Plaintiff did have standing, it appears that he has failed to adequately plead either of his claims—fraud and breach of fiduciary duty—pursuant to Federal Rules of Civil Procedure 8, 9, and 12(b)(6) against any of the Defendants. Fed. R. Civ. P. 8, 9, 12(b)(6); *see* Compl. ¶¶ 31–36. Fraud is associated with a heightened pleading requirement. Fed. R. Civ. P. 9, 12(b)(6); *Stradford v. Zurich*, No. 02 Civ.3628 2002 WL 31819215 (S.D.N.Y. Dec. 13, 2002); *see also Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff neglects to plead fraud committed by any of the Defendants with particularity, failing to provide the time, place, and circumstance of the allegedly fraudulent actions. Compl. ¶¶ 15–20, 31–36. Instead, Plaintiff has offered only broad and conclusory allegations of conspiracy. *Id.*

Moreover, Plaintiff fails to adequately allege, much less show to be plausible, a claim for breach of fiduciary duty. Mr. Sweigert has not established the existence of a fiduciary relationship between himself and any of the named Defendants, has not shown that Defendants breached any such relationship, and has not demonstrated that such a breach proximately caused Plaintiff's injuries. *See, e.g.*, *Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc.*, 595 F. Supp. 2d 110, 116 (D.D.C. 2009); *see also Davis v. United States*, 495 U.S. 472, 479 (1990) (holding that there exists "no legally enforceable relationship . . . between the recipient of the donated funds and the qualified donee"); *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 116 (D.D.C. 2017) (professional membership organizations owe no fiduciary duty to their members).

connection to the $30 loss that Plaintiff purportedly incurred.  *See supra*.  This enables, and indeed requires, the Court to dismiss the action *in toto*.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 17, 19, 20, 22, 26) are **GRANTED**.  Pursuant to Rule 12(h)(3), this order applies to all Defendants, not just those that have responded.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 20, 2018                                      RUDOLPH CONTRERAS
                                                                United States District Judge